```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHERREE LOZAMA,

                    Plaintiff,

v.                                              1:13-CV-0020
                                                (GTS)
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
_____
```

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF PETER M. MARGOLIUS<br> Counsel for Plaintiff<br>7 Howard Street<br>Catskill, NY 12414 | PETER M. MARGOLIUS, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>– REGION II<br> Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | AMANDA J. LOCKSHIN, ESQ.<br>ANDREEA L. LECHLEITNER, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this Social Security action filed by Sherree Lozama ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

   Plaintiff was born on August 4, 1984.  Plaintiff has an eleventh grade education and obtained a general education development (GED) certificate.  Plaintiff has worked as a marketing representative, a sales representative, and a hair dresser.  Generally, Plaintiff's alleged disability consists of human immunodeficiency virus ("HIV"), fatigue, and anemia.  Plaintiff's alleged disability onset date is June 14, 2010.

   B.  **Procedural History**

   On June 28, 2010, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income.  Plaintiff's application was initially denied on November 7, 2010, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On November 1, 2011, Plaintiff appeared in a video hearing before the ALJ, Miriam L. Shire.  (T. 27-54.)  On March 23, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 10-21.)  On November 8, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)

   C.  **The ALJ's Decision**

   Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 15-19.)  First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2014, and has not engaged in substantial gainful activity since June 14, 2010, the alleged onset date.  (T. 15.)  Second, the ALJ found that Plaintiff's HIV, seizure disorder, and Bell's palsy are severe impairments.  (*Id.*)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.  (T. 16.)  Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations: no work from heights, around dangerous machinery, or in temperature or humidity extremes; no amount of reading or watching a television screen; and no more than simple repetitive tasks in a routine work environment with relatively no changes in the workplace.

(T. 16-17.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work as a marketing representative, a sales representative, and a hair dresser. (T. 17.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 18.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to develop the record by not obtaining additional medical records from her primary care physician, Hafiz Maje, M.D. (Dkt. No. 10, at 3-4 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the RFC is unsupported by substantial evidence. (*Id.* at 4-5.) Third, Plaintiff argues that the ALJ failed to discuss the side effects of Plaintiff's medications as required by SSR 96-7p. (*Id.* at 5-6.) Fourth, and finally, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. (*Id.* at 6-7.)

Defendant makes three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ did not fail to develop the record. (Dkt. No. 12, at 6-10 [Def.'s Mem. of Law].) Second, Defendant argues that the RFC is supported by substantial evidence. (*Id.* at 10-15.) Third, and finally, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 14-15.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

4

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146,

5

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized below.

### A. Whether the ALJ Failed to Develop the Record by Not Obtaining Additional Medical Records from Plaintiff's Treating Physician, Dr. Maje

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 6-10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. §§ 404.1512(d), 416.912(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999);

*Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). However, an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5; *see also Hart v. Comm'r,* 07-CV-1270 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010).

Plaintiff argues that the ALJ failed to develop the record by not obtaining additional medical records from her treating primary care physician, Dr. Maje, of the Dr. Betty Shabazz Health Center. (Dkt. No. 10, at 3-4 [Pl.'s Mem. of Law].) Plaintiff stated that she advised the ALJ that there were additional medical records when she appeared for her hearings on July 21, 2011, and November 1, 2011. (*Id*. at 4.) Plaintiff stated that she and Dr. Maje discussed her alleged symptoms of chronic diarrhea, headaches and memory loss. (*Id.*)

A review of the hearing transcripts indicates that, at Plaintiff's initial hearing, she appeared *pro se* and requested an adjournment because her legal representative had ordered additional records from her doctor. (T. 24.) Therefore, it was reasonable for the ALJ not to order the additional records under the circumstances. At Plaintiff's second hearing, she again appeared *pro se* and explained that the legal representative she had expected to retain did not agree to take her case. (T. 29.) The ALJ asked Plaintiff whether she had reviewed the evidence in her file, and whether there was anything else that she wanted her to consider. (T. 30-31.) Plaintiff stated that she reviewed her file and there was no additional information that she wanted the ALJ to consider. (*Id.*) Moreover, the ALJ elicited testimony from Plaintiff about updates to her condition. (T. 40-41). Although Plaintiff testified that she did not know her updated CD4 count,[1] the record indicates that Plaintiff's CD4 count was 302 in August 2010. (T. 40, 167.)

---

[1] "Individuals who have HIV infection or other disorders of the immune system may have tests showing a reduction of either the absolute count or the percentage of their T-helper lymphocytes (CD4 cells)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.00(F)(2). Generally, when the CD4 count is below 200, the susceptibility to opportunistic infection is greatly increased. *Id.*

7

Finally, Plaintiff testified that she had not had any opportunistic infections during the relevant period. (T. 40-41.)

Here, the record contained reports from Dr. Maje and other treating sources at the Shabazz Health Center, dated September 28, 2009 to September 27, 2010. (T. 199-250.) Additionally, the record contained Plaintiff's treatment notes from the Kings County Hospital and SUNY Downstate Medical Center, as well as a physical consultative examination report and opinion from Vinod Thukral, M.D., discussed in Part III.B. of this Decision and Order. (T. 159-98, 251-54.) Therefore, the evidence of record was sufficiently complete for the ALJ to make an informed decision and she was not required to recontact Dr. Maje. 20 C.F.R. §§ 404.1512(d), 404.1520b(c)(1), 416.912(d), 416.920b(c)(1); *Rosa*, 168 F.3d at 79 n.5; *see also Hart,* 2010 WL 2817479, at *5.

Accordingly, remand is not required on this basis.

### B. Whether the ALJ's RFC Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 10-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R. §§ 404.1545, 416.945. RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as therapists and social workers, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "no work from heights, around dangerous machinery, or in temperature or humidity extremes; no amount of reading or watching a television screen; and no more than simple repetitive tasks in a routine work environment with relatively no changes in the workplace." (T. 16-17.)

The Court finds that the ALJ's RFC determination was supported by substantial evidence, including the opinion of consultative examiner, Dr. Thukral. (T. 17.) On November 13, 2010, Dr. Thukral opined that Plaintiff had no limitation in "sitting, standing, pulling, pushing, or any other such related activity." (*Id.*) Dr. Thukral noted that Plaintiff was unable to close her right eye completely, but had no other abnormalities. (*Id.*) Dr. Thukral observed that Plaintiff appeared to be in no acute distress, had normal gait, could walk on heels and toes

9

without difficulty, had full squat, and needed no assistance during the examination. (*Id.*) Moreover, Plaintiff reported to Dr. Thukral that she could cook, clean, launder, shop, shower, bathe, and dress herself daily. (*Id.*)

An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

Regarding Plaintiff's HIV, the ALJ noted that the record shows a history of it being asymptomatic and without any complications. (T. 16.) The ALJ noted that Plaintiff's CD4 count was 292 in October 2009, and was 302 in August 2010, "both within the asymptomatic range for HIV." (T. 16.) The ALJ noted that Plaintiff reported to Dr. Thukral that she had not had any opportunistic infections or hospital admissions due to HIV. (*Id.*) Additionally, at the hearing, Plaintiff testified that she had not had any opportunistic infections during the relevant period. (T. 41.) Although Plaintiff testified that she did not know her updated CD4 count, the record indicates that Plaintiff's CD4 count was 302 in August 2010. (T. 40, 167.) As a result, the ALJ found that there is nothing in the record indicating that Plaintiff's HIV "prevents her from performing basic work activities or causes her more than occasional fatigue." (T. 17.)

Notwithstanding, the ALJ stated that she gave Plaintiff the full benefit of the doubt as to her complaints about her visual acuity and some fatigue that may result from her HIV. (T. 17.)

10

Accordingly, the ALJ included visual limitations in her RFC determination and limited Plaintiff to basic work activities. (T. 16-17.) More specifically, the ALJ determined that Plaintiff could perform no amount of reading or watching a television screen, and no more than simple repetitive tasks in a routine work environment with relatively no changes in the workplace. (T. 16-17.)

Regarding Plaintiff's seizure disorder, the ALJ noted that Plaintiff was admitted to SUNY Downstate Medical Center in September 2010 after having a fall associated with seizure disorder. (T. 17.) The ALJ noted that the treating physician ruled out a stroke, laboratory tests did not reveal any abnormalities, and Plaintiff was released in stable condition. (*Id.*) Nonetheless, the ALJ's RFC determination included restrictions to account for Plaintiff's seizure disorder, specifically no work from heights, around dangerous machinery, or in temperature or humidity extremes. (T. 16.)

Plaintiff argues that the ALJ did not consider the opinion of non-examining consultant, M. Muhammad, rendered on December 10, 2010. (Dkt. No. 10, at 5 [Pl.'s Mem. of Law].) The ALJ must consider RFC assessments made by acceptable medical sources. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). However, the record indicates that Mr. Muhammad is a Single Decision Maker ("SDM"), and an SDM is not an acceptable medical sources under the regulations. (T. 260.) 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). "SDMs are non-physician disability examiners who 'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Hart v. Astrue,* 11-CV-0119, 32 F. Supp 3d 227, at 237 (N.D.N.Y. Sept. 17, 2012) (citing 71 FR 45890-01, 2006 WL 2283653 [Aug. 10, 2006].) "On May 19, 2010, Frank Cristaudo, the Chief Administrative Law Judge for the Social Security Administration, issued a memorandum citing POMS Instruction DI 24510.050C and

11

instructing all ALJs that RFC determinations by SDMs should not be afforded any evidentiary weight at the administrative hearing level." *Hart,* F. Supp 3d at 237.

In any event, even if the ALJ accepted Mr. Muhammad's opinion, it would not lead to a finding of disability. (T. 14.) Mr. Muhammad opined that Plaintiff would be able to perform light work with no concentrated exposure to hazards, including machinery and heights. (255-60.) The vocational expert identified other existing light work with no exposure to hazards that Plaintiff could perform at step five. (T. 18, 50, 51.)

For these reasons, the ALJ's RFC was supported by substantial evidence, and remand is not required on this basis.

### C. Whether the ALJ Erred in the Credibility Analysis

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 15-19 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically

determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Plaintiff argues that the ALJ failed to discuss the side effects from Plaintiff's medications as required by SSR 96-7p. (*Id.* at 5-6.) More specifically, Plaintiff argues that the ALJ failed to explain why she did not accept Plaintiff's allegations of chronic diarrhea, headaches, and memory loss, and include limitations in the RFC for these side effects. (*Id.*) However, the ALJ stated that her RFC determination "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (T. 16.) Notably, this includes considering side effects of medication. 20 §§ C.F.R. 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

In any event, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012). When, as here, "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of her symptoms are not credible to the extent alleged. (T. 16.) The ALJ cited evidence that was inconsistent with Plaintiff's allegations of disabling symptoms, including Dr. Thukral's opinion and examination notes, Plaintiff's treatment records, Plaintiff's daily activities, and Plaintiff's work performed during the period of alleged disability. (T. 16-17.)

First, the ALJ considered medical evidence of record that was inconsistent with Plaintiff's allegations of disabling symptoms. (*Id.*) The ALJ noted that, on November 13, 2010, Dr. Thukral opined that Plaintiff had no limitation in "sitting, standing, pulling, pushing, or any other such related activity." (T. 17.) The ALJ noted that Dr. Thukral observed that Plaintiff was unable to close her right eye completely, but had no other abnormalities. (*Id.*) The ALJ further noted that Dr. Thukral observed that Plaintiff appeared to be in no acute distress, had normal gait, could walk on heels and toes without difficulty, had full squat, and needed no assistance during the examination. (*Id.*)

Second, the ALJ considered Plaintiff's treatment records and cited evidence that was inconsistent with her allegations of disabling symptoms. (T. 16-17.) The ALJ noted that the

14

record shows a history of Plaintiff's HIV being asymptomatic and without any complications. (T. 16.) The ALJ noted that Plaintiff's CD4 count was 292 in October 2009, and was 302 in August 2010, "both within the asymptomatic range for HIV." (*Id.*) The ALJ noted that Plaintiff reported to Dr. Thukral that she had no opportunistic infections or hospital admissions due to her HIV. (*Id.*) The ALJ found that there is nothing in the record indicating that Plaintiff's HIV "prevents her from performing basic work activities or causes her more than occasional fatigue." (T. 17.) Notwithstanding, the ALJ stated that she gave Plaintiff the full benefit of the doubt as to her complaints about her visual acuity and some fatigue that may result from her HIV. (*Id.*) Accordingly, the ALJ included visual limitations into his RFC determination and limited Plaintiff to basic work activities. (T. 16-17.)

Third, the ALJ considered Plaintiff's activities of daily living that were inconsistent with her allegations of disabling symptoms. (T. 17.) For example, the ALJ noted that Plaintiff reported that she could cook, clean, launder, shop, shower, bathe, and dress herself daily. (T. 17.) Additionally, Plaintiff reported that she took care of her two children, ages one and seven, used public transportation, read, and socialized with friends. (T. 37, 137, 139, 252.)

Fourth, and finally, the ALJ considered Plaintiff's work performed during the time period that she alleged disability. (T. 17.) An ALJ may consider a plaintiff's work history and any efforts to work in assessing a plaintiff's credibility. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *5 (July 2, 2006). Here, Plaintiff testified that she performed some work as a hairdresser during the time period that she alleged disability. (T. 33-34.) Plaintiff notes that the ALJ misstated the amount of Plaintiff's earnings, however the ALJ acknowledged that Plaintiff's earnings were insufficient to be considered substantial gainful activity. (T. 15.) Under the circumstances, the ALJ's error as to the amount of Plaintiff's earnings is harmless and

15

the ALJ properly considered Plaintiff's effort to work in assessing her credibility.

For these reasons, the ALJ's credibility analysis was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 30, 2016
Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge